IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JAIME JONES,<br>    Plaintiff,<br><br>v.<br><br>KASEY KRAMER, *et al.*,<br>    Defendants. | Case No. 4:24-cv-04184-JEH |

**Order**

This matter is now before the Court on Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 32). For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

**I**

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging Defendants Dr. Kurt Osmundson and Kasey Kramer violated his Eighth Amendment rights based on their deliberate indifference to his Achilles tendon injuries while he was incarcerated at Hill Correctional Center ("Hill"). (Docs. 1, 7).

On December 12, 2025, Defendants filed a Motion for Summary Judgment (Doc. 32). The Clerk issued a notice warning Plaintiff that if he failed to respond within 21 days, the Motion would be granted, if appropriate, and the case would be terminated without a trial. (Doc. 33). Plaintiff's response was due on January 2, 2026. To date, Plaintiff has not responded to Defendants' Motion or requested an extension of time. Pursuant to Local Rule 7.1(D)(2)(b)(6), "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Accordingly, by

failing to file a response, Plaintiff has admitted every numbered fact asserted by Defendants in their Motion.

## II

During the relevant period, Plaintiff was an inmate in the custody of the Illinois Department of Corrections and incarcerated at Hill. Defendant Osmundson was a physician, and Defendant Kramer was a nurse practitioner. Both were licensed in the state of Illinois and employed to provide certain medical services to inmates.

On June 26, 2023, Plaintiff injured his foot while playing basketball in the yard. Nurse Boley applied ice, noted Plaintiff had naproxen in his cell, and informed Defendant Kramer of the injury. The same day, Defendant Kramer evaluated Plaintiff, instructed him to take naproxen for pain, and ordered an ACE wrap, crutches, an x-ray, and a follow-up appointment.

The x-ray completed on July 3, 2023 revealed no acute fracture or dislocation, preserved joint spaces, and unremarkable soft tissue. On July 5, 2023, Defendant Osmundson saw Plaintiff and went over the imaging results with him. There was no swelling, and Plaintiff was able to walk normally with a steady gate. Plaintiff did not have pain with palpitation of the area. At that time, Defendant Osmundson discontinued crutches and restrictions, as any injury appeared to have healed.

On July 12, 2023, Plaintiff returned to the Health Care Unit ("HCU"), stated he could not bear weight, and rated his pain an 8 out of 10. Nurse Pilson noted minor swelling and splinted the lower extremity.

On July 14, 2023, Plaintiff returned to the HCU and complained that naproxen was ineffective. Licensed practical nurse ("LPN") Young noted Plaintiff walked with a limp, but he did not have swelling. Plaintiff was placed on the list to see the nurse practitioner.

On July 19, 2023, Defendant Kramer evaluated Plaintiff and noted he could bear his full weight on his right foot, extend the foot fully, and had difficulty with flexion. Defendant Kramer determined Plaintiff might have an Achilles tear. Defendant Kramer discontinued naproxen, ordered 800mg ibuprofen, issued a low bunk permit for three months, provided an ACE wrap, and ordered an ultrasound to check for an Achilles tear. Defendant Osmundson concurred and sent the matter for collegial review. Plaintiff's referral for an ultrasound was approved on August 3, 2023.

Plaintiff underwent an ultrasound on August 22, 2023. Results noted asymmetric enlargement and heterogeneity of the right Achilles when compared to the left, and an MRI was recommended. Defendant Osmundson concurred and ordered the MRI. The request was approved by collegial review on September 8, 2023, and sent to scheduling.

On October 20, 2023, Plaintiff went to sick call complaining about his right ankle. LPN Newmann advised Plaintiff that his MRI was being scheduled and assisted him with splinting. On December 19, 2023, Plaintiff returned to sick call about his right ankle, inquired about the status of his MRI, and was informed it had not been scheduled yet. On December 21, 2023, Defendant Kramer was notified that an MRI was still not scheduled and re-ordered an MRI stat.

On December 28, 2023, Plaintiff underwent an MRI, which revealed a partial thickness tear of the non-insertional Achilles tendon in the setting of moderate tendinosis. Additionally, a mild deep deltoid ligament sprain and mild tenosynovitis of the FHL were noted. The MRI findings indicated that conservative treatment with rest was appropriate.

On January 3, 2024, Defendant Kramer referred Plaintiff to an orthopedic specialist for evaluation. On January 20, 2024, Plaintiff refused care from Defendant Osmundson to check his medical equipment. On March 21, 2024,

Plaintiff was evaluated by an orthopedic specialist, who recommended a referral to a foot and ankle specialist. Defendant Kramer referred Plaintiff to the foot and ankle specialist on April 2, 2024.

On April 8, 2024, Plaintiff complained of *left* Achilles pain that began when he was "running in place in the yard." Plaintiff was ultimately determined to have ruptured his left Achilles, which required surgery. On April 22, 2024, Plaintiff completed a pre-operative assessment for repair of the left Achillies tear with Defendant Osmundson and was cleared for surgery on April 24, 2024. Surgery was performed the same day.

On April 25, 2024, Defendant Kramer ordered crutches and permits for a wheelchair, low bunk, and low gallery. On May 14, 2024, Defendant Kramer noted a healing Achillies rupture and ordered a short-term antibiotic, Keflex. On May 17, 2024, Defendant Kramer ordered low bunk and low gallery permits and no sports, weightlifting, yard, or gym. On July 15, 2024, Defendant Kramer referred Plaintiff to OSF St. Mary Physical Therapy & Rehab for his left ankle. On July 24, 2024, Plaintiff refused to attend a follow-up appointment with Defendant Osmundson. On August 28, 2024, a physical therapist conducted an evaluation and determined no further visits were necessary.

### III

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must

construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

## B

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Deliberate indifference involves a two-part analysis; the plaintiff must show that (1) the medical condition was objectively serious, and (2) the prison official acted with deliberate indifference to his medical needs. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765-66 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). Indications of a serious medical need can include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1373.

To establish the subjective element of a deliberate indifference claim, the plaintiff must show that the prison official acted with a sufficiently culpable state of mind. *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). "[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), as amended (Aug. 25, 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "This is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). "[M]ere negligence" or even civil "objective recklessness" simply "is not enough." *Petties*, 836 F.3d at 728. "This subjective standard requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837) (internal citations omitted).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to

6

establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).

## IV

Defendants do not dispute that Plaintiff's ankle injury was objectively serious. Therefore, the Court will focus its analysis on the subjective element of Plaintiff's deliberate indifference claim.

The record shows that Defendant Kramer examined Plaintiff's right ankle on June 26, 2023, the same day the injury occurred. Defendant Kramer ordered an ACE wrap, crutches, an x-ray, and a follow-up appointment and advised Plaintiff to take naproxen for pain. On July 5, 2023, Defendant Osmundson evaluated the x-ray results and determined there was no acute fracture, preserved joint spaces, and unremarkable soft tissue. Based on his medical knowledge and experience, it appeared that any injury had healed. As a result, Defendant Osmundson discontinued the crutches and restrictions.

Plaintiff may have wanted Defendants to do more, but the Eighth Amendment does not entitle Plaintiff to dictate the terms of care. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). Plaintiff did not present any evidence that Defendants' treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Defendants] did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoted citation omitted); *see also Pyles*, 771 F.3d at 409 (disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

When Plaintiff continued visiting the HCU about his right ankle, additional testing was ordered. On July 19, 2023, Defendant Kramer ordered an ultrasound to check for an Achilles tendon tear. Defendant Osmundson concurred, and the

request was approved on August 3, 2023. Based on the results of the ultrasound, Defendant Osmundson ordered an MRI, which was approved on September 8, 2023. The evidence undisputedly shows that Defendants opted for further testing when Plaintiff exhibited worsening symptoms. Plaintiff has not furnished any evidence to suggest that this treatment was inadequate or that Defendants chose "an 'easier and less efficacious treatment' without exercising professional judgment." *Petties*, 836 F.3d at 730 (quoting *Estelle*, 429 U.S. at 104 n. 10).

On December 21, 2023, Defendant Kramer learned Plaintiff's MRI had not been scheduled and immediately re-ordered an MRI. On December 28, 2023, the MRI revealed that conservative treatment with rest was appropriate. Defendant Kramer referred Plaintiff to a specialist for further evaluation. Although Plaintiff waited several months to receive an MRI, there is no evidence that Defendants were responsible for scheduling medical appointments or that any delay caused or worsened Plaintiff's injury. An inmate claiming a delay in treatment must offer "verifying medical evidence" that the delay, rather than the inmate's underlying condition, caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 714-15, (7th Cir. 2007); *Langston v. Peters*, 100 F.3d 1235-40 (7th Cir. 1996). Plaintiff presents no verifying medical evidence to support his claim.

When Plaintiff injured his left ankle on approximately April 8, 2024, Defendants once again provided prompt medical care, referrals, and medical permits. When Defendants learned Plaintiff had ruptured his left Achilles tendon, Plaintiff received surgery on April 24, 2024. Plaintiff's surgery was successful, and physical therapy was ordered. Defendant Kramer ordered crutches, permits for a wheelchair, low bunk, and low gallery, and restrictions to aid the healing process. On August 28, 2024, the physical therapist determined no additional treatment was necessary. Based on the undisputed facts, no reasonable jury could find that

8

Defendants were deliberately indifferent to Plaintiff's ankle injuries. Defendants are entitled to summary judgment.

V

For the reasons stated, *supra*:

(1)   Defendants' Motion for Summary Judgment [32] is GRANTED. Defendants Kurt Osmundson and Kasey Kramer are DISMISSED WITH PREJUDICE. Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses. The Clerk is directed to close this case and enter judgment.

(2)   Although this case has been dismissed, Plaintiff remains responsible for any remainder of the $350 filing fee. (d/e 10/23/2024).

(3)   If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: February 9, 2026

s/Jonathan E. Hawley
U.S. District Judge